UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JERRIE WHITE,                                                        No.: 1:18-cv-1689

                                Plaintiff,

                                                         **COMPLAINT   AND   DEMAND**
                                                         **FOR JURY TRIAL**

                -against-

THE BRIDGE MENTAL HEALTH AGENCY,

                                Defendant.
------------------------------------------------------------------X

        Plaintiff, JERRIE WHITE, by and through her attorneys, MARK DAVID SHIRIAN,

P.C., complaining of the Defendant, respectfully alleges as follows:

        1.      This firm, MARK DAVID SHIRIAN P.C., represents Plaintiff JERRIE WHITE

(hereinafter "Plaintiff") in connection with her claims against her employer, Defendant THE

BRIDGE MENTAL HEALTH AGENCY, (hereinafter "THE BRIDGE") for age discrimination

pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Section 261,

gender discrimination, hostile work environment, retaliation, and wrongful termination, pursuant

to Title VII of the Civil Rights Act and disability discrimination, pursuant to Titles I and V of the

American with Disabilities Act, 42 U.S.C. 12101 et seq. ("ADA"), Equal Pay Act of 1963

(EPA), and age, disability, gender and racial discrimination pursuant to New York State Human

Rights Law, New York Executive Law 290 et seq., and New York City Admin. Cod. §8-107.

        2.      This is also an action seeking damages to recover lost benefits and wages, and an

additional amount as liquated damages, interest, compensatory damages, reasonable attorneys'

fees and costs against Defendants for violation of Plaintiff's rights protected by the Family

Medical Leave Act ["FMLA"].  Specifically, Defendant interfered with Plaintiff's right to take

leave under the FMLA, pursuant to 29 U.S.C. § 2615(a) (1) and discriminated against her after

they denied her FMLA benefits by creating a hostile work environment and by terminating her employment.

## JURISDICTION AND VENUE

3.     This court has original federal question jurisdiction under 28 U.S.C. 1331 and 1343 because this case is brought for disability discrimination, hostile work environment, retaliation, and wrongful termination, under Title VII of the Civil Rights Act and Titles I and V of the American with Disabilities Act, 42 U.S.C. 12101 et seq. ("ADA"), Age Discrimination in Employment Act (ADEA), 29 U.S.C. Section 261, Equal Pay Act of 1963 (EPA), FMLA, and other tortious conduct. This Court has supplemental jurisdiction over Plaintiff's New York State Human Rights Law ("NYSHRL"), New York Executive Law 290 *et seq.*, N.Y. Exec. L 296 *et seq.* and New York City Admin. Cod. §8-107. claims as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.     Venue properly lies in the Southern District of New York pursuant to 28 U.S.C. 1391(b), because the claims arose in this judicial district and the defendant is doing business in this District.

## PARTIES

5.     Plaintiff Jerrie White is a 51 year-old African-American female. Ms. White resides in Bronx County, City and State of New York.

6.     At all relevant times, Plaintiff White met the definitions of an "employee" and a "qualified individual with a disability" under all applicable statutes.

7.      The Bridge International, Inc. ("The Bridge") The Bridge provides critical services, including supported housing, mental health and substance abuse treatment, case management, and job training and placement, to 2,300 vulnerable New Yorkers each year. The Bridge is located at 248 W. 108th Street, New York, NY 10025.

8.      The Bridge was an employer of Ms. White at all relevant times to this action.

9.      At all relevant times, The Bridge has met the definition of an "employer" under all applicable statutes.

## PROCEDURAL BACKGROUND

10.      On or about 2016, Plaintiff White filed a complaint against defendant The Bridge with the Equal Opportunity Commission ("EEOC") under the Equal Pay Act and assigned EEOC Charge No. 16G-2016-01616.

11.      On or about November 12, 2016, the EEOC issued a "Notice of Right to Sue" to Plaintiff White advising her of her right to file an action against defendant within 2 years (3 years for willful violations) of the alleged EPA underpayment.

12.      This lawsuit has been timely filed within two years of Plaintiff's receipt of the EEOC's Notice of Right to Sue dated November 12, 2016 with respect to her claims regarding EPA underpayment.

13.      On or about October 13, 2017, Plaintiff White filed a complaint against defendant The Bridge with the Equal Opportunity Commission ("EEOC") for disability discrimination and age discrimination and assigned EEOC Charge No. 520-2018-00399.

14.     On or about December 4, 2017, the EEOC issued a "Notice of Right to Sue" to Plaintiff White advising her of her right to file an action against defendants within 90 days of her receipt of the notice.

15.     This lawsuit has been timely filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue dated December 4, 2017. and within at least 2 years of the alleged EPA underpayment.

16.     Any and all other prerequisites to the filing of this suit have been met.

### FACTS

17.     In or around June 3, 2013, Ms. White was hired by The Bridge as a Social Worker in one of its ACT Teams in the Bronx, New York. Ms. White drove The Bridge vehicles assigned to the ACT programs that were allegedly serviced regularly to make field visits and transport clients to and from appointments. Ms. White provided treatment planning, discharge planning, regular communication and documentation with AOT, OMH, DOMH, substance abuse treatment and clinical documentation.

18.     Ms. White worked Monday through Friday from 9 to 5. Her biweekly salary was about $1,782.

19.     Ms. White was also a member of Union Local 1199 SEIU United Healthcare Workers East.

20.     Ms. White's supervisor was Pat Myrie until about September 2016.

21.     In or around September 2016, Sheryl Silver was hired as Ms. White's supervisor.

22.     At all times relevant to this action, Ms. White exclusively utilized The Bridge equipment, including but not limited to, a motor vehicle owned by The Bridge. The Bridge also maintained records of hours and directly supervised Ms. White on a daily basis.

23.     The acts of discrimination forming the basis of this complaint began on January 17, 2014 when Ms. White was involved in a motor vehicle accident during the course of her employment with The Bridge. Specifically, Ms. White escorted a client back to her residence in the Bronx. As she was driving the client home in the agency vehicle, (KIA, gray in color), Ms. White noticed that the rear left side of the car was engulfed in flames.

24.     Ms. White had previously made complaints of the poorly maintained vehicles prior to the accident that were ignored and disregarded by The Bridge.

25.     As a result of the accident, Ms. White sustained personal injuries that are believed to be permanent.

26.     As such, Ms. White was placed on work injury disability intermittently due to suffering with the following serious health conditions believed to be permanent in nature: head and neck injury, permanent neurological damage, anxiety, and PTSD.

27.     However, Ms. White was never offered any accommodation for her disability. Notwithstanding her disability and serious health conditions, Ms. White was fully qualified to work at The Bridge, with or without reasonable accommodation.

28.     As a result of the work-related injuries, Ms. White went out on medical leave and returned on or about April 23, 2014.

29.     Ms. White made a complaint with OSHA because of the hazardous conditions and unsafe motor vehicles maintained by The Bridge.

30.     On or about April 23, 2014, Ms. White returned to work, in what she felt was a hostile work environment. For example, Ms. White was informed that she was behind in her work, although her work was supposed to be covered by "covering staff" during her absence.

31.     Staff at The Bridge had informed other staff members that Ms. White made a complaint to OSHA.

32.     Two new cases had been added to Ms. White's caseload while she was on workers compensation.

33.     Moreover, upon returning to work, other staff members were laughing about the car being on fire, and made jokes about how she should not sue the Bridge.

34.     Pay Myrie asked Ms. White is she was still receiving care by a physician. Pay Myrie refused Ms. White's request for service dollars.

35.     Ms. White requested a vacation on February 9, 2015 for February 25 – March 2, 2015 but was denied due to non-completion of work. However, Ms. White was the only employee denied vacation for alleged non-completion of work.

36.     As a result, Ms. White initiated a hostile work environment grievance in light of the vacation denial, which she believes was in retaliation for the OSHA complaint Ms. White initiated.

37. On or about March 30, 2015, during a hostile work environment grievance, Pat Myrie admitted that Mr. Olilus, the Assistant Team Leader, completed staff work but not Ms. White.

38. As a result, Ms. White was informed by H.R. Director Anthea Sutherland that this was unacceptable and should not have been done.

39. In March 2015, Ms. White's Assertive Community Treatment ("ACT") re-located to another location in the Bronx and Ms. White was placed in a hostile work environment by Patricia Myrie, program director, as Ms. White was labeled as a whistleblower.

40. On or about March 9, 2015, Ms. Pat Myrie accused Ms. White of stealing metrocards and was targeted because of her disability.

41. In or around March 27, 2015, the ACT II Program relocated to a different location. Ms. Myrie punitively changed Ms. White's assigned seat from seating plan to a location in the office where the desk was facing the wall, separate from the team, even though Ms. White had seniority at that time.

42. In or around April 2015, Ms. White went out on medical leave.

43. On or about September 2, 2015, Ms. White returned from medical leave.

44. On September 29, 2015 and discovered that one of the white males, Alexander Rascover (hereinafter "Rascover"), was hired as the same title as Ms. White but had less experience.

45. Ms. White found out directly from Rascover that he earned about $50,000.00 per year, when Ms. White was earning around $45,000 per year for the same work and experience.

46.     The other white male was Samuel Albright, who, upon information and belief, made more than Ms. White with less experience and education who was hired in January 2016.

47.     Upon information and belief, both of the white makes had been hired with a higher salary than Ms. White, despite her possessing dual Master's Degrees.

48.     In January 2016, Ms. White made a request for a salary increase.

49.     However, the Bridge denied Ms. White's salary increase request because they stated that she was not actually a social worker, but was a case manager and did not have the credentials to be a social worker. As such, the Bridge determined that she was not entitled to a higher salary.

50.     However, Ms. White was originally hired as a social worker. Ms. White believes that she was discriminated and retaliated against because she filed a complaint with OSHA with respect to the conditions of the automobiles. In essence, Ms. White was demoted from Social Worker to case manager and was never notified of the change.

51.     The Bridge defended the decision, and had stated that Ms. White does not have any of the required credentials under the ACT guidelines to be classified as "professional staff." The Bridge further stated that although Ms. White does have a master's degree in mental health counseling, a license in mental health counseling is needed to qualify as a professional staff under the ACT guidelines, which Ms. White does not have.

52.     Moreover, another Bridge employee, Juant Luann was hired as a mental health counselor without a limited permit but only a master's degree in mental health counseling.

53.     As a result, Ms. White filed a grievance with her union regarding the denial of a salary increase.

54.     On February 1, 2016 a grievance hearing was held with the Bridge and her union regarding the denial of salary increase.

55.     On or about February 19, 2016, Ms. White initiated a New York State Human Rights Discrimination Complaint regarding her salary issue.

56.     On February 23, 2016, by letter, the Bridge denied her grievance.

57.     After the Bridge denied her grievance, the union did not follow-up with her regarding her grievance.

58.     Between the end of February 2016 and June 2016, Ms. White repeatedly reached out to Ms. Bellamy, Ms. White's union supervisor, via phone and email to request the status of the grievance.

59.     On June 14, 2016, Ms. White received a letter from the Union stating that the Union did not find that the grievance warrants arbitration and considered the matter closed.

60.     On or about July 8, 2016, Ms. White received a letter from the Union stating that the Bridge is willing to offer a settlement amount to settle the wage discrimination issue, along with her resignation.

61.     On October 31, 2016, Ms. White received a letter from the Union informing her that the Division Hearing and Appeals would hear her case on November 16, 2016.

62.     On November 15, 2016, Ms. White received an email from Bellamy stating that the hearing was cancelled. Ms. White then called Donna Smith, the legal director, who informed Ms. White that the hearing was still on and that Ms. White did not have to be present or the hearing.

63.     On November 16, 2016, Ms. White went to the union offices for the hearing and was informed there was no hearing scheduled for her. Ms. White was also informed that the Union did not hold hearings regarding wage discrimination.

64.     On or about December 14, 2016, Florence Birwa, a Human Resources Generalist employed by defendant Bridge sent Plaintiff a letter that stated as a follow up to the FMLA Designation Notice dated March 15, 2016, informing Plaintiff that her request for leave under the FMLA was not approved. However, Defendant never provided Plaintiff a reason as to why Plaintiff was denied FMLA benefits.

65.     Moreover, Plaintiff believes that she was discriminated against because in light of Defendant's failure to provide Plaintiff with FMLA benefits.

66.     In or around April 18, 2017, The Bridge sent Ms. White a letter informing her that if she did not return to work by April 24, 2017, her employment would be terminated.

67.     On April 20, 2017, Ms. White sent The Bridge a letter and a disability certificate indicating that she was still receiving treatment for a disability.

68.     In or around April 25, 2017, Ms. White was terminated by The Bridge, effective April 24, 2017.  Specifically, The Bridge terminated Ms. White because she did not return to work. Accordingly, The Bridge stated that they "cannot continue to hold" Ms. White's position

open and that her employment was terminated. Annexed hereto as Exhibit A is a copy of the April 25, 2017 letter.

69.     Moreover, upon information and belief, Ms. White believes that she was treated poorly because of her age. For example, many of The Bridge's new hires in 2015-2017 were in their mid-twenties to early thirties.

70.     As such, Ms. White was denied promotions that were later awarded to younger employees by the Bridge.

71.     Additionally, Ms. White believes she was replaced with employees significantly younger than her.

72.     Moreover, Ms. White believes that she was retaliated against because she initiated several grievances and filed a complaint with the New York State Division of Human Rights.

73.     Plaintiff consistently excelled in her work at The Bridge.

74.     In the course of performing the duties of her position, Plaintiff White was forced to endure a hostile work environment, which was severe and pervasive and altered her working conditions

**FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**DISCRIMINATION AND HARASSMENT IN VIOLATION OF ADA**

**(Brought against Defendant The Bridge)**

75.     Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

76.     Defendant The Bridge has discriminated against Plaintiff in violation of the ADA by denying her equal terms and conditions of employment, including but not limited to, taking advantage of her disability, for which she was hired and fully qualified, because of her disability, because Defendant regarded her as disabled, and/or because of Plaintiff's record of disability.

77.     Defendant The Bridge has discriminated against Plaintiff in violation of the ADA by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of her disability, because Defendant regarded her as disabled, and/or because of Plaintiff's record of disability.

78.     As a direct and proximate result of Defendant The Bridge's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

79.     As a direct and proximate result of Defendant The Bridge's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, insomnia, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

80.     Defendant The Bridge's unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**VIOLATION OF THE NYSHLR. EXEC. L. 296,** *et seq.*
**(Brought against Defendant The Bridge)**

81.     Plaintiff repeats and incorporate by reference the allegations stated above as if they were set forth in full herein.

82.     Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

83.     In violation of NYSHRL, Defendant discriminated against Plaintiff on the basis of gender, race and/or disability by subjecting her to a hostile work environment that was severe or pervasive enough to affect the terms and conditions of her employment.

84.     Defendant at all times relevant herein had actual and constructive knowledge of the conduct described above.

85.     As a result of the discrimination perpetrated and maintained by Defendant and to Plaintiff and its failure to protect the Plaintiff from discrimination, Plaintiff suffered emotional distress.

86.     Defendant violated the NYSHRL by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failing to act of the defendant as described above.

87.     Defendant failed to comply with its duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

**THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**(Discrimination and Harassment in Violation of New York State Human Rights**
**Law against Defendant The Bridge)**

88.     Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

89.     Defendant The Bridge has discriminated against Plaintiff in violation of the New York State Human Rights Law by denying her equal terms and conditions of employment, including but not limited, taking advantage of Plaintiff, because of her disability, because Defendant regarded her as disabled, and/or because of Plaintiff's record of disability.

90.     Defendant The Bridge has discriminated against Plaintiff in violation of the New York State Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of her disability, because Defendant regarded her as disabled, and/or because of Plaintiff's record of disability.

91.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic damages, but not limited to, loss of past and future income, compensation and benefits.

92.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

**FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED**
**BY THE EQUAL PAY ACT OF 1963 ("EQUAL PAY ACT"),**
**29 U.S.C. 206, ET SEQ.**
**(Brought against Defendant The Bridge)**

93.     Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

94.     Defendant discriminated against the plaintiff within the meaning of the Equal Pay Act of 1963 (EPA), by providing her with lower pay than similarly situated male colleagues on the basis of her gender, female, and race, even though the plaintiff performs similar duties requiring the same skill, effort and responsibility of male counterparts.

95.     Plaintiff performed jobs that required equal skill, effort and responsibility, and are or were performing under similar working conditions.

96.     Defendant discriminated against Plaintiff by subjecting her to discriminatory pay, discriminatory denials of bonuses and other compensation incentives, discriminatory denial of promotions, and other forms of discrimination in violation of the Equal Pay Act.

97.     The differential in pay between male and female employees was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to gender and race.

98.     Defendant caused, attempted to cause, contributed to, or caused the continuation of wage discrimination based on gender and race, in violation of the EPA.

99.     The foregoing conduct constitutes as willful violation of the EPA within the meaning of 29 U.S.C. 255 (a). Because defendant has willfully violated the EPA, a three-year statute of limitations applies to such violations.

100.    As a result of defendant's conduct as alleged in this complaint, plaintiff has suffered and continues to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

101.    By reason of defendant's discrimination, plaintiff is entitled to all legal and equitable remedies available for violations of the EPA, including liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. 216(b).

102.    Attorneys fees should be awarded under 29 U.S.C. 216 (b).

**FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF
AGE, DISABILITY, GENDER AND RACIAL DISCRIMINATION IN
VIOLATION OF
NEW YORK CITY ADMIN. COD. §8-107
(Brought against Defendant The Bridge)**

103.    Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

104.    Plaintiff alleges that the foregoing actions by Defendant violate the New York City Administrative Code § 8-107, in that Defendant discriminated against Plaintiff on the basis of race, age, disability and/or gender by subjecting her to a hostile work environment because of her race age, disability and/or gender.

105.    As part of its pattern and practice of employment discrimination, Defendant The Bridge through its agents subjected Plaintiff to age, racial, disability and gender discrimination and failed to take corrective action.

106.    Defendant The Bridge knew or should have known about the age, disability and gender and racial discrimination in the workplace.

107.    Defendant The Bridge failed and refused to take appropriate action to end the age, disability, gender and racial discrimination to which Plaintiff was subjected to, which was clearly a demonstration of bad faith.

108.    The Defendant's discrimination against Plaintiff was committed with reckless and callous disregard of her right to a workplace free from discrimination based on age, disability, gender and race.

109.    As a result of the Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre-post judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF
### AGE DISCRIMINATION IN VIOLATION OF AGE DISCRIMINATION IN
### EMPLOYMENT ACT (ADEA), 29 U.S.C. SECTION 261
### (Brought against Defendant The Bridge)

110.    Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

111.    Plaintiff was over the age of 40.

112.    Plaintiff was subjected to harassment, through words and actions, based on age.

113.   The nature of the harassment was such that it created an objectively intimidating, hostile and offensive work environment.

114.   Plaintiff alleges that Defendant The Bridge through its agents engaged in a pattern and practice of age discrimination against her with respect to the terms, conditions and privileges of her employment in violation of the ADEA.

115.   As part of its pattern and practice of employment discrimination, Defendant The Bridge through its agents subjected Plaintiff to age discrimination and failed to take corrective action.

116.   Defendant The Bridge knew or should have known about the age discrimination in the workplace.

117.   Defendant The Bridge failed and refused to take appropriate action to end the age discrimination to which Plaintiff was subjected to, which was clearly a demonstration of bad faith.

118.   That as a result of the discriminatory acts of Defendant The Bridge through its agents, Plaintiff's employment was terminated because of her age.

119.   Defendant The Bridge's age discrimination against Plaintiff White was committed with reckless and callous disregard of her ADEA right to a workplace free from discrimination based on age.

120.   As a result of Defendant The Bridge's unlawful conduct, Plaintiff White is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SEVENTH CAUSE OF ACTION
## Violation of the Family and Medical Leave Act ("FMLA")
## (Interference)
## (Brought against Defendant The Bridge)

121.   Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

122.   At all times mentioned in this complaint, the Family and Medical Leave Act (FMLA) was in full force and effect and was binding on Defendant.

123.   The FMLA provides that eligible employees are entitled to take up to 12 weeks of leave in any 12-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee, pursuant to 29 U.S.C.A. §2612.

124.   Pursuant to 29 U.S.C. § 2615 (a)(1), "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right under the FMLA."

125.   Plaintiff was clearly an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. §2611 (2)(a)(i)(ii).

126.   Plaintiff allegedly requested FMLA leave from Defendant, her employer, with whom she had been employed for at least twelve (12) months pursuant to the requirements of 29 U.S.C.A. §2611(2)(i).

127.   Further, Plaintiff had at least 1,250 hours of service with Defendant during the prior twelve (12) months.

128.   Plaintiff was entitled to leave, pursuant to 29 U.S.C.A. §2612(a)(1) due to her serious health condition.

129.   Defendant was aware of its responsibilities under FMLA and that Plaintiff was entitled to FMLA in light of her serious condition.

130.   Defendant violated Plaintiff's FMLA rights by failing to provide Plaintiff with appropriate leave under the applicable provisions of the FMLA.

131.   Unlawful "[i]nterfering with the exercise of an employee's rights ... includes[s], for example, not only refusing to authorize FMLA, but discouraging an employee from using such leave." 29 C.F.R § 825.220(b).

132.   Defendant by failing to provide Plaintiff with appropriate leave under the applicable provisions of the FMLA, prejudiced Plaintiff by proximately causing damages to Plaintiff, including but not limited to losses in wages, salary and employment benefits.

133.   Defendant willfully interfered with, restrained, and /or denied Plaintiff's exercise of her FMLA rights by failing to approve her alleged FMLA request.

134.   As a direct result and proximate result of defendant's intentional, willful, malicious, and interference of Plaintiff's FMLA rights, plaintiff lost employment benefits, and other compensation, in an amount to be proven at trial.

135.   As a result of Defendant's willful violations of the FMLA, which were not made in good faith, Plaintiff is entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii), in an amount to be proven at trial.

136.   Therefore, Plaintiff sues Defendant pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 *et. seq.*

**EIGHTH CAUSE OF ACTION**
**Violation of the Family and Medical Leave Act ("FMLA")**
**(Discrimination)**
**(Brought against Defendant The Bridge)**

137.   Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

138.   The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter [of the FMLA]." 29 U.S.C. § 2615(a)(2). The FMLA further provides that "the Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies. . . . . " *Id.*

139.   Defendant discriminated against plaintiff by wrongfully terminating Plaintiff after she attempted to exercise her right to take FMLA leave.

140.   Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to plaintiff's rights.

141.   As a direct and proximate result of defendants' unlawful actions, plaintiff lost her wages, salary, employment benefits, and other compensation, and suffered other monetary losses, in an amount to be proven at trial.

142.   As a result of defendant's willful violations of the FMLA, which were not done in good faith, plaintiff is entitled to liquidated damages under 29 U.S.C. §2617(a)(1)(A)(iii), in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays and respectfully requests that the Court enter judgment in her favor and against Defendant, containing the following:

a. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of New York.

b. Order Defendant The Bridge to institute and carry out policies, practices, and programs which eradicate the effects of its past and present unlawful employment practices;

c. Order Defendant The Bridge to make whole Plaintiff JERRIE WHITE, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, lost bonuses, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

d. Order Defendant The Bridge to make whole Plaintiff JERRIE WHITE, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

e. Order Defendant The Bridge to make whole Plaintiff JERRIE WHITE, by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, embarrassment, and isolation, resulting from the unlawful employment practices described above, in amounts to be determined at trial;

f. Order Defendant The Bridge to pay Plaintiff JERRIE WHITE, punitive damages for its malicious and reckless conduct described above;

g.   Declaring that Defendant engaged in unlawful employment practices prohibited by the FMLA, by interfering with Plaintiff's entitlement to FMLA leave, and discriminating against plaintiff for by ultimately terminating her;

h.   Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful interference of Plaintiff's FMLA entitlement and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

i.   Awarding statutory liquidated damages to Plaintiff, pursuant to FMLA;

j.   Awarding Plaintiff punitive damages caused by Defendants' intentional, willful, wonton, and reckless actions;

k.   Awarding Plaintiff reasonable costs and disbursement of this action, including her reasonable attorneys' fees; and

l.   Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: February 23, 2018
       New York, New York

Respectfully submitted,

MARK DAVID SHIRIAN P.C.

By: _____
         Mark D. Shirian, Esq.
228 East 45th Street, Suite 1700B
New York, NY 10017
Telephone: (516) 417-0201
Email: mshirian@shirianpc.com

COUNSEL FOR PLAINTIFF